## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BOBBY EARL JEFFERSON, JR., <br><br> Plaintiff, <br><br> v. <br><br> TOM ROY, CHRIS PAWELK, ROY WITTE, JOHN R. KING, BRUCE REISER, JEFF LONSKY, STEVE HAMMER, CAROL KRIPPNER, REENA SOLHEID, ALICE REMILLARD, ANTHONY FORCHAS, and ARTHUR DANA DICKSON, <br><br> Defendants. | Case No. 16-CV-3137 (WMW/SER) <br><br><br> **REPORT AND RECOMMENDATION** |

This matter comes before the Court on (1) Defendants' motion for summary judgment (ECF No. 96) (Summary-Judgment Motion); (2) Plaintiff Bobby Earl Jefferson, Jr.'s motion to compel certain discovery (ECF No. 108) (Discovery Motion); and (3) Jefferson's motion seeking appointment of an expert (ECF No. 119) (Expert-Appointment Motion). For the reasons discussed below, the Court recommends granting the Summary-Judgment Motion in part due to Jefferson's failure to exhaust his administrative remedies (but denying the motion to the extent it seeks dismissal of this action with prejudice). The Court also recommends denying as moot both the Discovery Motion and the Expert-Appointment Motion.

## I. BACKGROUND

### A. Events at Minnesota Correctional Facility in Stillwater

Jefferson was an inmate at the Minnesota Correctional Facility in Stillwater (MCF-Stillwater) from July 31, 2015, through January 19, 2016. *See* Mem. of Law in Supp. of Tom Roy, Chris Pawelk, Roy Witte, John R. King, Bruce Reiser, Jeff Lonsky, Steve Hammer, Carol Krippner, Reena Solheid, Alice Remillard, Anthony Forchas, and Arthur Dana Dickson in Their Individual Capacities' Motion for Summ. J. 9 (ECF No. 98) (Defendants' Memorandum) 9.[1] Soon after arriving, he successfully applied to work in MCF-Stillwater's "L Shop," a metal workshop operated at MCF-Stillwater by MINNCOR Industries. *See id.* at 3, 9. Jefferson worked in the L Shop from August 13, 2015, until his January 2016 release from MCF-Stillwater. *See id.* at 9–10.

Jefferson reports that after his release, he had three relevant health-related episodes. *See* Br. & Mem. of Law in Supp. of Plaintiff's First Cross-Mot. for Summ. J. 6 (Jefferson Response).[2] On April 1, 2016, Jefferson was "rushed to the emergency room" at Regions Hospital for an unspecified reason. *Id.* On June 12, 2016, Jefferson was

---

[1] In what follows (unless otherwise noted), the Court cites only to portions of the parties' factual recitations that are not disputed. Furthermore, while the factual recitation in Defendants' Memorandum cites various underlying materials, the Court generally will not provide those underlying citations.

[2] As discussed below, while Jefferson titles this document as a "cross-motion" for summary judgment, the Court agrees with Defendants that the document is best described as a response to the Summary-Judgment Motion. *See* Mem. of Law of Tom Roy, Chris Pawelk, Roy Witte, John R. King, Bruce Reiser, Jeff Lonsky, Steve Hammer, Carol Krippner, Reena Solheid, Alice Remillard, Anthony Forchas, and Arthur Dana Dickson in Their Individual Capacities in Opp'n to Pl.'s Cross-Mot. for Summ. J. 1–2 (ECF No. 98) (Defendants' Reply). The Court will thus refer to Jefferson's filing as the Jefferson Response.

"rushed to St. Joseph's Hospital . . . for severe chest pains." *Id.* By August 22, 2016, Jefferson was back in prison—at the Minnesota Correctional Facility at Lino Lakes (MCF–Lino Lakes)—and met with medical staff after experiencing "severe problems breathing." *Id.* at 10; *cf.* Minn. Dep't of Corrs., Obligation Progression History—Bobby Earl Jefferson 2 (Aug. 17, 2018) (Incarceration Report) (showing Jefferson's periods of incarceration), *attached as exhibit to* Aff. of Jeff Lonsky in Supp. of Defs.' Mot. for Summ. J. (ECF No. 100) (Lonsky Affidavit). At this meeting, a doctor diagnosed Jefferson with asthma and purportedly "attributed this to [Jefferson] working in" the L Shop. Jefferson Resp. 6.

The L Shop's air quality had indeed been a concern for officials with the Minnesota Department of Corrections (MNDOC). *See* Defs.' Mem. 4–7. Defendant Dickson (MCF-Stillwell's safety administrator) had tested the area's air quality in October 2014, leading to a February 2015 report suggesting that L Shop welders could be exposed to various toxins at levels above applicable exposure limits. *See id* at 4. Other MCF-Stillwell administrators learned of these concerns in March 2015. *See id.*

This led to various remedial measures, *see generally id.* at 5–7 (discussing measures), though the parties dispute whether Jefferson benefitted from them. For instance, Defendants contend that L Shop workers were apprised of air-quality issues and were required to wear respiratory protection when actively welding. *See id.* at 5. Jefferson contends that he was not present at these meetings, that he was never informed about air-quality issues, and that the L Shop had "a culture of not wearing masks and of mask use being optional." Jefferson Resp. 4–5. Furthermore, Defendants contend that

3

fume extractors were put in place to fix air-quality issues, while Jefferson argues that these extractors were inadequate given the L Shop's number of welding stations. *Compare* Defs.' Mem. 6–7 *with* Jefferson Resp. 5.

Critically, the parties also dispute whether Jefferson properly informed prison officials of his complaints about L Shop air quality. The MNDOC has a grievance policy under which prisoners can seek administrative remedies for problems concerning conditions of confinement. *See* Defs.' Mem. 8. In relevant part, prisoners must start the grievance process by sending an informal "kite." *See id.* If a prisoner considers the response to a kite insufficient, he can submit a formal grievance by sending an "Offender Grievance form" to the "facility grievance coordinator . . . within 45 calendar days of the occurrence of the issue being grieved." *Id.* Formal grievances are logged, investigated, and ruled on, with the prisoner given written notification of the grievance's receipt and the eventual ruling. *See id.* If the prisoner deems the response to his formal grievance insufficient, he can generally file an appeal with the DOC's "central office grievance appeal coordinator." *Id.* This leads to a further investigation and a "final decision"—no further appeal is permitted—by "the assistant or deputy commissioner or the commissioner." *Id.* at 9.

There appears to be no dispute that Jefferson lodged no air-quality complaints during his L Shop stint. *See id.* at 10–11. After his medical visits, Jefferson sent one communication to MNDOC staff about L Shop air quality—a letter the DOC Commissioner's Office received on September 9, 2016. *Id.* at 11; Jefferson Resp. 6–7; *see also* Letter from Paul Camini & Bobby Jefferson to Tom Roy et al. (Sept. 7, 2016)

4

(September 2016 Letter), *attached as exhibit to* Lonsky Aff.  Defendant Jeff Lonsky, MINNCOR Industries's vice-president, responded to that letter with a memorandum dated September 26, 2016.  Defs.' Mem. 11–12; *see also* Mem. from Jeff Lonsky to Bobby Jefferson (Sept. 26, 2016) (MINNCOR Response), *attached as exhibit to* Lonsky Aff.  Jefferson did not submit any further papers to MNDOC officials after getting the MINNCOR Response.  *See* Defs.' Mem. 12.

    **B.**    **The Present Litigation**

Jefferson filed this action's original complaint on September 21, 2016—before receiving the MINNCOR Response.  *See* Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983 at 1 (ECF No. 1) (Complaint).  After several defendants filed motions to dismiss, Jefferson filed an amended complaint, which is the current operative pleading.  Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983 at 1 (ECF No. 27) (Amended Complaint).

In addition to the present Defendants, the Amended Complaint names the MNDOC, MINNCOR Industries, 3M Companies,[3] and unnamed "Stillwater Prison Officials."  *See* Statement of Claim 10–11, *attached to* Am. Compl.  It appears to press two causes of action.  First, Jefferson claims that he was denied his Fourteenth Amendment right to equal protection.  *See id.* at 9.  Second, he claims that he was "denied medical care after exposure to toxins either by omission, negation, failure to act,

---

[3] The Amended Complaint alleges that 3M received materials produced from the L Shop, manufactured respirators used by L Shop welders after MNDOC learned of the air-quality problems, and knew of the "risks associated with [L Shop] operations."  *See* Am. Compl. 3, 6, 9.

5

or simply ignoring Plaintiff's obvious medical needs." *See id.* The Court construes this as a claim arising under the Eighth Amendment. *Cf. Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (establishing that Eighth Amendment bars deliberate indifference to prisoners' serious medical needs).

Various Defendants moved to dismiss the Amended Complaint, and the resulting motion practice led to the dismissal of various Defendants and of Jefferson's official-capacity claims against the present Defendants. *See Jefferson v. Roy*, No. 16-CV-3137 (WMW/SER), 2017 WL 4325704 (D. Minn. Sept. 28, 2017). What persists are Jefferson's individual-capacity claims against the remaining Defendants.

Following several months of discovery, Defendants filed the Summary-Judgment Motion and various supporting documentation on August 31, 2018. Jefferson filed the Jefferson Response on October 12, 2018. *See* Jefferson Resp. 1. While the Jefferson Response is titled a cross-motion, Defendants correctly point out that much of the document reads as a response to the Summary-Judgment Motion rather than as a self-standing summary-judgment motion. *See* Defs.' Reply 1–2 (quoting Jefferson Response); *see also, e.g.*, Jefferson Resp. 36 ("Both the subjective and objective elements necessary to prove an Eighth Amendment violation have been shown by Plaintiff to exist *and for a Jury to decide*. . . . There is [sufficient] evidence *from which a jury could find* that all Defendants were deliberately indifferent to Plaintiffs health and future . . . ." (emphasis added)).

Alongside the Jefferson Response, Jefferson also filed the Discovery Motion. That motion seeks to compel Defendants (among other things) to "adequately answer"

various interrogatories and "to name or release vital information for other inmates who have vital information." Discovery Mot. 1. In November 2018, Jefferson filed the Expert-Appointment Motion, which asks the Court to "[a]ppoint [an] independent expert" in this matter, given the technical issues the case purportedly involves. Expert-Appointment Mot. 1.

## II.   ANALYSIS

### A.   Failure to Exhaust Administrative Remedies

Defendants assert that Jefferson did not exhaust his administrative remedies. *See* Defs.' Mem. 13–17. Under 42 U.S.C. § 1997e(a)—part of the Prison Litigation Reform Act (PLRA)—"[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a) plainly applies to Jefferson's suit. The suit is an "action . . . brought with respect to prison conditions,"[4] Jefferson brings it under 42 U.S.C. § 1983, *see* Am. Compl. 1, and Jefferson is presently incarcerated.

---

[4] Section 1997e(a)'s definition of an "action . . . brought with respect to prison conditions" is expansive, meaning "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2); *see also Castano v. Neb. Dep't of Corrs.*, 201 F.3d 1023, 1024 (8th Cir. 2000) (holding that definition in § 3626(g)(2) applies to 42 U.S.C. § 1997e(a)). The Supreme Court has insisted that "the PLRA's exhaustion requirement applies to *all inmate suits about prison life*, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (emphasis added).

7

When a plaintiff subject to § 1997e(a) fails to exhaust administrative remedies before filing an action, "dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). To meet the exhaustion requirement, a prisoner must "properly exhaust[]" his claims. *Jones v. Bock*, 549 U.S. 199, 205 (2007); *see also Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting *Jones*). Proper exhaustion requires that a prisoner "'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (quoting *King v. Iowa Dep't of Corrs.*, 598 F.3d 1051, 1053 (8th Cir. 2010)). That is, "the prison's requirements . . . define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Burns*, 752 F.3d at 1141 (quoting *Jones*).

Defendants assert that Jefferson "had an available administrative remedy through the prison grievance policy to challenge Defendants' conduct and the conditions of his work assignment and was aware of this process," but nevertheless "never filed, or attempted to file, a grievance related his position in the metal workshop or the work conditions." Defs.' Mem. 15. Defendants maintain that under applicable MNDOC policy—which Defendants provide, *see* Minn. Dep't of Corrs., Policy No. 303.100 (July 29, 2014) (Grievance Policy), *attached as exhibit to* Aff. of Kim Ebeling in Supp. of Defs.' Mot. for Summ. J. (ECF No. 102)—"to initiate a formal grievance, a prisoner must 'submit an Offender Grievance form to the faculty grievance coordinator.'" Defs.' Mem. at 15–16. Defendants contend that Jefferson failed to submit anything meeting these requirements.

8

The Court agrees. The only document that Jefferson points to as communicating his concerns to prison officials is the September 2016 Letter. *See* Jefferson Resp. 4–11 (presenting exhaustion discussion). On its face, that document does not meet MNDOC requirements for a formal grievance. MNDOC policy requires, for instance, that a formal grievance be submitted on "an Offender Grievance form," should be limited to two pages (the form itself, plus an additional page if needed), and should attach any kites the offender used to try to resolve the issue informally. Grievance Policy 2. The September 2016 Letter does not follow *any* of these rules. As proper exhaustion under § 1997e(a) requires compliance with applicable prison rules, the Court concludes that Jefferson has failed to exhaust his administrative remedies.

### B.     Jefferson's Exhaustion Arguments

By the Court's count, Jefferson mounts five arguments in response to Defendants' exhaustion argument. None of them succeeds.

*First*, Jefferson asserts that he did not know about the harms he faced in the L Shop until after he was released from MCF-Stillwater in January 2016. *See* Jefferson Resp. 4–6. In particular, he asserts that disclosures made to other inmates were not made to him, so he had no reason to believe that his medical conditions were attributable to L Shop conditions until August 22, 2016. *See id.* at 6.

Even if what Jefferson says here is true, it does not excuse a failure to exhaust administrative remedies. Jefferson points to no case law suggesting that delays in learning of injury allows an inmate to bypass § 1997e(a), nor is the Court aware of any. Perhaps such delays could equitably toll a deadline to pursue administrative remedies—

9

for present purposes, the Court need not decide the point. What matters is merely that Jefferson's delay in learning of his alleged injury at most delayed his exhaustion obligation. It did not eliminate it.

*Second*, Jefferson appears to suggest that "Defendants concealed . . . information to prevent the timely filing of grievances that could result in lawsuit." Jefferson Resp. 6. He points here to a doctrine that inmates can be excused from following an institution's grievance procedures when prison officials themselves prevent prisoners from using them. *See id.* (citing *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005)). Jefferson seems to argue that MNDOC officials' response to the September 2016 Letter prevented him from using proper grievance procedures because the responding officials did not inform him that he needed to file a formal grievance. *See, e.g.*, *id.* at 7 ("At no time did [MNDOC officials] ever reject [the September 2016 Letter], correct nor state their objection based on the grounds they now wish to today in their motion for summary judgment [i.e., on the ground that the Letter was not a formal grievance]."); *id.* at 8 ("Nothing in MNDOC's response letter put Plaintiff on notice of an untimely grievance or any other procedural default, with any specificity. Never was Plaintiff informed to submit kite and follow up chain of command before filing a formal grievance with prisons grievance coordinator or central office.").

This argument fails as well. Under § 1997e(a), prisoners must exhaust "such administrative remedies as are available." In relevant part, the U.S. Supreme Court has noted that administrative remedies are not "available" in the § 1997e(a) sense when "prison administrators thwart inmates from taking advantage of a grievance process

10

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (quoting *Ross*). The only suggestion Jefferson raises of possible "machination" or "misrepresentation" is the MINNCOR Response. *See* Jefferson Resp. 6–7.[5] But the MINNCOR Response simply does not reflect machination or misrepresentation. It specifically says that it is providing "factual information regarding the environmental concerns" raised by the September 2016 Letter. *See* MINNCOR Resp. 1. After presenting three bullet points of factual representations, the memo concludes by stating, "I hope the statement of facts above gives you a better perspective on our commitment to the safety of all offenders and staff. And that we have taken appropriate action and will continue to make safety a priority in our organization." *Id.* at 1–2. Nothing here discourages Jefferson from filing a formal grievance or suggests that his letter constituted any particular step in the MNDOC grievance process.

     Jefferson tries to avoid this conclusion in various ways, but these do not persuade. He argues that the MINNCOR Response was sent within 20 days of the date of the September 2016 Letter, consistent with MNDOC's usual 20-day deadline for responding to a formal grievance. *See* Jefferson Resp. 7; Grievance Policy 3. But the mere fact that the MINNCOR Response came within 20 days of the September 2016 Letter does not mean that MNDOC officials viewed that letter as a formal grievance. As noted above, Jefferson also contends that no one ever "reject[ed]" his "letter of grievance," or

---

[5] On the Court's read, Jefferson does not assert any attempts to intimidate him from using the grievance process.

11

"correct[ed] []or state[d] [an] objection" to the grievance.  This actually undercuts Jefferson's point.  Under MNDOC policy, when MNDOC officials get a formal grievance, they specifically dismiss or affirm it.  *See* Grievance Policy 3.  No verbiage of that sort appears anywhere in the MINNCOR Response.  The response's failure to "reject" the September 2016 Letter thus suggests that MNDOC officials did not view that letter as a formal grievance.  And while Jefferson points to certain aspects of how MNDOC officials handled the September 2016 Letter and suggests that they match MNDOC policy for grievance handling, *see* Jefferson Resp. 7–8, he is plainly wrong about this.  The policies he points to permit flexible handling of certain grievances when an offender "has received threats to his/her physical safety, well-being, or can establish that he/she would be in danger if the complaint would be known at the facility."  *See* Grievance Policy 3.  Jefferson does not suggest that he fit into these categories in September 2016, so the fact that MNDOC officials may have taken actions resembling any practices within these special policies does not show that they saw the September 2016 Letter as a formal grievance.[6]

   *Third*, Jefferson suggests that the September 2016 Letter was an acceptable grievance because it "provided prison officials with a fair opportunity to correct their own errors."  Jefferson Resp. 9.  But the law here has no fair-opportunity exception.  As noted above, the U.S. Supreme Court has made clear that to exhaust under § 1997e(a), one must follow the relevant grievance procedures.  *See Jones*, 549 U.S. at 218; *Burns*,

---

[6] This is particularly true given that, as noted above, the September 2016 Letter does not comply with the basic form requirements for formal grievances.

12

752 F.3d at 1141. The proper inquiry thus is not whether Jefferson gave prison officials a fair opportunity to address his concerns; it is instead whether he followed prison rules for submitting those concerns.[7]

*Fourth*, Jefferson argues that "Defendants in this action did not raise failure to exhaust administrative remedies as an affirmative defense in their answer," and so waived the defense. Jefferson Resp. 10. For the present Defendants, Jefferson is wrong; their answers did in fact plead the failure-to-exhaust defense. *See* Jt. Answer of Steve Hammer, Carol Krippner, Reena Solheid, Alice Remillard, Anthony Forchas, and Arthur Dana Dickson in their Individual Capacities to Pl.'s Am. Compl. 6 (ECF No. 51); Jt. Answer of Tom Roy, John King, Bruce Reisner, Chris Pawelk, Roy Witte, and Jeff Lonsky in their Individual Capacities to Pl.'s Am. Compl. 6 (ECF No. 80).

*Fifth*, Jefferson asserts that he was not subject to § 1997e(a)'s exhaustion requirement because of his January 2016 release from MCF-Stillwater. Jefferson Resp. 11. Specifically, Jefferson submitted the September 2016 Letter on or about September 7, 2016. *See* September 2016 Letter 4. On that date, Jefferson was no longer at MCF-Stillwater, but was instead at MCF–Lino Lakes. *See* Incarceration Report 2. Jefferson

---

[7] In a related vein, Jefferson suggests that under the appropriate tests for exhaustion, a failure to exhaust is excusable if "special circumstances" exist. *See* Jefferson Resp. 9–10. But the case Jefferson cites here for the special-circumstances point—*Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004)—has been specifically rejected by *Jones*. *See, e.g.*, *Medina v. Napoli*, 725 F. App'x 51, 53 n.1 (2d Cir. 2018) ("[P]rior to the Supreme Court's decision in *Ross*, our Circuit had held that there were 'special exceptions' to the requirement that prisoners must exhaust their administrative remedies. *See, e.g.*, [*Hemphill*]. In *Ross*, the Supreme Court expressly overruled the 'special circumstances' exception to the exhaustion doctrine . . . and reaffirmed the mandatory nature of the exhaustion of administrative remedies doctrine.").

was also at MCF–Lino Lakes when he executed this action's original complaint on September 19, 2016. *See* Compl. 8; Incarceration Report 2.

Jefferson cites *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998), for the proposition that "[l]itigants who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of" the § 1997e(a) exhaustion requirement. Jefferson Resp. 11. But *Doe* does not help Jefferson. In *Doe*, the U.S. Court of Appeals for the Eighth Circuit affirmed a district-court judgment reflecting a jury verdict against a county and a sheriff based on injuries suffered by a pretrial detainee; when the plaintiff filed suit, he was not incarcerated. 150 F.3d at 921. On appeal, the defendants argued, among other things, that the district court had erred when it held that various PLRA provisions (in particular, its attorney-fee provision) did not apply to the plaintiff's suit. *See id.* The Eighth Circuit agreed with the district court specifically because Doe was not incarcerated when he filed his complaint. *See id.* As the Eighth Circuit noted, "[t]he PLRA was designed to discourage the initiation of litigation by a certain class of individuals—prisoners—that is otherwise motivated to bring 'frivolous complaints as a means of gaining a short sabbatical in the nearest Federal courthouse.' Congress therefore fully intended to distinguish between those who are 'prisoners' when they decide whether to file a complaint and those who are not." *Id.* (citation omitted).

This distinction cuts against Jefferson: when he filed this action, he *was* incarcerated. Under the logic of *Doe*, then, PLRA provisions—including its exhaustion requirement—squarely apply to Jefferson's suit.

14

In summary, then, the Court concludes that there is no factual dispute here regarding exhaustion: Jefferson failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  The Court thus recommends that this suit be dismissed.  Given this recommendation, the Court also recommends denying (as moot) the Discovery Motion and Expert-Appointment Motion.

### C.     Dismissal Without Prejudice

This leads to a final question: should the suit be dismissed with or without prejudice?  Defendants argue that the dismissal should be with prejudice, asserting that "[b]ecause more than 45 days have passed since the occurrence of the event being grieved, [Jefferson] has procedurally defaulted under the DOC's grievance procedures." Defs.' Mem 16; *see also* Grievance Policy 2 (establishing 45-day deadline).  Jefferson does not address this point, presumably believing that he should prevail on the exhaustion point in the first place.

The Eighth Circuit has repeatedly indicated that dismissals based on failure to exhaust under § 1997e(a) should be without prejudice.  *See, e.g.*, *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) (citing cases).  Defendants cite two decisions from this district dismissing cases with prejudice based on failure to exhaust, *see Hill v. Malachinski*, No. 14-CV-1578 (DSD/BRT), 2015 WL 9916294, at *8 (D. Minn. Dec. 30, 2015), *report and recommendation adopted*, 2016 WL 308781 (D. Minn. Jan. 25, 2016); *Parks v. Dooley*, No. 09-CV-3514 (PAM/JSM), 2011 WL 847011, at *18 (D. Minn. Feb. 11, 2011), *report and recommendation adopted in relevant part*, 2011 WL 841278 (D. Minn. Mar. 8, 2011), but given the Eighth Circuit's guidance, the Court will dismiss

15

Jefferson's suit without prejudice. The two cases Defendants cite dismissed with prejudice on the ground that the relevant plaintiffs could no longer comply with procedural deadlines for prison grievances. Perhaps that condition applies here, but the Court cannot be sure. The materials before the Court do not indicate whether MNDOC policy permits the 45-day deadline that Defendants rely on to be extended by principles such as equitable tolling.[8] For the Court to hold that Jefferson's complaint should be dismissed with prejudice would essentially prejudge that point. The Court stresses that it is not deciding here whether MNDOC policy recognizes equitable tolling, or that (if it does) Jefferson merits it. The Court is merely determining that given these circumstances, dismissal without prejudice is the better course.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion for summary judgment (ECF No. 96) be **GRANTED** to the extent it seeks this action's dismissal, and **DENIED** to the extent it seeks dismissal of this action with prejudice.

2. This action be **DISMISSED** without prejudice.

---

[8] If MNDOC policy recognizes equitable tolling, it could apply here, given that (1) Jefferson arguably learned of his exposure to toxins well after he stopped working in the L Shop; and (2) Jefferson has had the present proceedings pending in federal court on the same subject matter.

3.  Plaintiff Bobby Earl Jefferson, Jr.'s motion to compel certain discovery (ECF No. 108) and motion seeking appointment of an expert (ECF No. 119) be **DENIED** as moot.

Dated: May 8, 2019
s/ *Steven E. Rau*
Steven E. Rau
U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).