UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bobby Earl Jefferson, Jr., | Case No. 16-cv-3137 (WMW/SER) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Tom Roy et al., | |
| Defendants. | |

This matter is before the Court on the May 8, 2019 Report and Recommendation (R&R) of United States Magistrate Judge Steven E. Rau. (Dkt. 130.) The R&R recommends granting in part and denying in part Defendants' motion for summary judgment, dismissing this case without prejudice, and denying as moot Plaintiff's motion to compel discovery and motion to appoint an expert. Plaintiff filed timely objections to the R&R, and Defendants responded. For the reasons addressed below, Plaintiff's objections are overruled, the R&R is adopted, and this case is dismissed without prejudice.

## BACKGROUND

The R&R contains a detailed recitation of the factual and procedural background of this case. As relevant here, while he was incarcerated at the Minnesota Correctional Facility in Stillwater (MCF-Stillwater), Plaintiff Bobby Earl Jefferson, Jr., worked in the metal foundry. Jefferson alleges that he was exposed to harmful toxins while working at the metal foundry. In the six months after his release in January 2016, Jefferson

experienced chest pain and visited multiple hospitals to address the symptoms he attributes to his work at the metal foundry.

Beginning in July 2016, Jefferson was incarcerated again. This time he was housed at the Minnesota Correctional Facility in Lino Lakes (MCF-Lino Lakes). During this period of incarceration, Jefferson met with medical staff at MCF-Lino Lakes after experiencing difficulty breathing. In a September 7, 2016 letter that Jefferson sent to several Minnesota Department of Corrections (DOC) officials, Jefferson wrote that "[t]he following is a formal notice of grievance," and proceeded to address his allegations pertaining to the toxin exposure at the metal foundry at MCF-Stillwater. A DOC official responded to Jefferson's letter on September 26, 2016, with "factual information regarding the environmental concerns" raised in Jefferson's letter.

Five days earlier, on September 21, 2016, Jefferson commenced this lawsuit, under 42 U.S.C. § 1983, against Defendants DOC, Minncorr Industries, and several DOC employees. Jefferson alleges that Defendants' actions violated the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. The Court subsequently granted several Defendants' motions to dismiss. But Jefferson's individual-capacity claims against twelve DOC employees remain. Defendants now move for summary judgment and seek dismissal of the individual-capacity claims with prejudice. The R&R recommends dismissing these remaining claims *without* prejudice based on Jefferson's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. The R&R also recommends denying as moot Jefferson's motion to compel discovery and motion seeking appointment of an expert.

# ANALYSIS

## I. Jefferson's Objections

A district court reviews de novo those portions of an R&R to which an objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3).

Jefferson objects on several grounds to the R&R's determination that he failed to exhaust all available administrative remedies. As a threshold matter, Jefferson asserts that the exhaustion requirement is inapplicable to his claims because he was not incarcerated when he filed his amended complaint. Jefferson also argues, in the alternative, that an administrative remedy was not available to him at MCF-Lino Lakes or his September 2016 letter satisfies the exhaustion requirement.

### A. Applicability of the Exhaustion Requirement

The Court first addresses Jefferson's argument that the PLRA's exhaustion requirement does not apply to his claims because he was on parole when he filed the now-operative amended complaint in this case. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies only to individuals who are incarcerated or detained. It "does not apply to plaintiffs who file § 1983 claims after being released from incarceration." *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005).

Although the United States Court of Appeals for the Eighth Circuit has not addressed whether the exhaustion requirement applies to a plaintiff who was incarcerated at the commencement of the lawsuit and is released on parole while the lawsuit was pending, *see Barber v. Schmidt*, No. 10-3317, 2011 WL 3476878, at *5 n.4 (D. Minn. July 12, 2011) (observing that Eighth Circuit has not addressed this issue), the majority of circuits that have addressed this issue have concluded that the relevant time when determining the applicability of the PLRA is the date when the lawsuit was filed. *See, e.g.*, *Williams v. Henagan*, 595 F.3d 610, 618-19 (5th Cir. 2010); *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003); *Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002); *Hopkins v. Addison*, 36 F. App'x 367, 369 (10th Cir. 2002); *Harris v. Garner*, 216 F.3d 970, 972-80 (11th Cir. 2000) (en banc). As such, the substantial weight of persuasive authority holds that the PLRA applies to lawsuits commenced by an incarcerated plaintiff even when the plaintiff subsequently is released from custody before the conclusion of the lawsuit.

This holding is consistent with the plain language of the PLRA's exhaustion requirement, which applies to actions "*brought* . . . by a prisoner." 42 U.S.C. § 1997e(a) (emphasis added); *see, e.g.*, *Harris*, 216 F.3d at 974 (concluding that the term "brought" in the PLRA's exhaustion provision refers to when the lawsuit was "commenced"); *accord United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206 (4th Cir. 2017) (collecting cases for the proposition that a plaintiff "brings" an action when they *commence* a lawsuit). Notably, the Supreme Court of the United States has described the PLRA's exhaustion requirement as "a prerequisite to suit," *Porter v. Nussle*, 534 U.S. 516, 524

4

(2002), and as a "precondition to bringing suit in federal court," *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (characterizing petitioner's prevailing argument). And as the Eleventh Circuit reasoned in *Harris*, when enacting the PLRA, "Congress made confinement status at the time of filing the criterion, because that is the point at which the difference in opportunity costs was causing the problem Congress was trying to solve: the large number of filings." 216 F.3d at 978 (citing *Christiansen v. Clarke*, 147 F.3d 655, 658 (8th Cir. 1998)).

Here, the undisputed record reflects that Jefferson was incarcerated at MCF-Lino Lakes when he filed this lawsuit on September 21, 2016. Jefferson was placed on "Intensive Supervised Release" on September 29, 2016, but after law enforcement officers apprehended him multiple times for absconding, he was incarcerated at MCF-Stillwater from May 30, 2017 until October 11, 2017, at which time he was again placed on "Intensive Supervised Release. After absconding once more, Jefferson was apprehended and has been continuously incarcerated since December 2017, with an anticipated release date of December 15, 2022. Jefferson filed his amended complaint in February 2017, during one of his periods of "Intensive Supervised Release." But consistent with the weight of the prevailing legal authority addressed above, the date of Jefferson's amended complaint has no bearing on the applicability of the PLRA's exhaustion requirement. And even if the filing of the amended complaint were legally significant to this analysis, an amended pleading "relates back to the date of the original pleading" if, as here, "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

5

Because Jefferson undisputedly was incarcerated when he commenced this lawsuit, the PLRA's exhaustion requirement applies to Jefferson's claims. Jefferson's objection to the R&R on this basis is overruled.

### B. Availability of an Administrative Remedy

Jefferson next contends that an administrative remedy was unavailable to him. The exhaustion requirement "is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires prisoner plaintiffs to exhaust all "administrative remedies *as are available*." 42 U.S.C. § 1997e(a) (emphasis added). Administrative remedies are "available" even if the plaintiff's preferred form of relief is not available. *Booth v. Churner*, 532 U.S. 731, 738-41 (2001). But administrative remedies are *not* "available" if prison officials have prevented the plaintiff from exhausting those remedies, such as by failing to respond to requests for grievance forms. *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002). Significantly, the PLRA "does not permit [a] court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.' " *Id.* at 809.

Jefferson maintains that he did not become aware of his injuries until after he was released from MCF-Stillwater, at which point he no longer had access to MCF-Stillwater's formal grievance system. Defendants dispute the point in time at which Jefferson became aware of his injuries, arguing that Jefferson was aware of the injuries before he was released from MCF-Stillwater, at which time the DOC's grievance procedures were available to

Jefferson.[1] But assuming, without deciding, that Jefferson did not become aware of his injuries until after his release from MCF-Stillwater, the record does not support Jefferson's argument that he could not use the DOC's grievance procedures for the nearly three months he was incarcerated at MCF-Lino Lakes, during which time he commenced this lawsuit. Jefferson maintains that "he did not have any way of using" MCF-Stillwater's grievance system when he was incarcerated at MCF-Lino Lakes because that system applies only "to the prison an inmate is currently in and its particular staff." But the record evidence contradicts Jefferson's assertion. A copy of the DOC's policy governing formal grievance procedures, supported by the affidavit of a DOC employee familiar with those procedures, indicates that an inmate is *not* limited to filing a grievance that pertains only to the facility in which the inmate is incarcerated. That Jefferson may have subjectively believed otherwise does not make the administrative procedures unavailable. *See id.* (that an inmate "may have subjectively believed that there was no point in pursing administrative remedies" is not relevant to whether administrative procedures were available). For these reasons, Jefferson's objection on this basis is overruled.

Jefferson also argues that an administrative remedy was not available to him because prison officials did not tell him how to properly file a formal grievance. An administrative remedy is unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

---

[1] Defendants emphasize that, while at MCF-Stillwater, Jefferson initiated verbal inquiries about the air quality, ventilation, and safety of the metal foundry. But this fact alone does not establish that Jefferson was aware of the injuries underlying his Section 1983 claims at that time.

7

*Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016). For example, an administrative remedy is unavailable if prison officials fail to respond to requests for grievance forms, deny access to the written administrative policy, or affirmatively mislead an inmate as to the proper administrative procedure. *See, e.g.*, *Townsend v. Murphy*, 898 F.3d 780, 783-84 (8th Cir. 2018); *Lyon*, 305 F.3d at 809. But Jefferson neither argues nor presents evidence that prison officials thwarted him from using DOC's formal grievance procedures through any such machination, misrepresentation, or intimidation. Jefferson's September 2016 letter does not request grievance forms or instructions on how to file a formal grievance. And the letter sent to Jefferson in response to his September 2016 letter does not include any misrepresentations as to the formal grievance procedures. Jefferson suggests that prison officials had an affirmative obligation to give him guidance as to the proper administrative procedure, even when he has not expressly requested such guidance. But Jefferson has not identified, and the Court is not aware of, any legal authority requiring prison officials to affirmatively advise Jefferson how to revise his informal grievance letter into one that complies with the prison's administrative procedures. To the contrary, it is the inmate's burden to "exhaust administrative remedies in accordance with the prison's applicable procedural rules." *Townsend*, 898 F.3d at 783 (internal quotation marks omitted) (alterations omitted). Jefferson's objection on this basis is, therefore, overruled.

C. **Exhaustion of Administrative Remedies**

Jefferson argues, in the alternative, that he exhausted his administrative remedies because his September 2016 letter is a formal grievance that the DOC accepted.

To satisfy the PLRA's exhaustion requirement, a prisoner must "properly" exhaust the available administrative remedies. *Jones*, 549 U.S. at 205. Proper exhaustion requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules" because "the prison's requirements . . . define the boundaries of proper exhaustion." *Id.* at 218 (internal quotation marks omitted). Here, the DOC's formal grievance policy requires an inmate to complete a specific formal grievance form, abide by a 2-page limit, and attach a copy of all prior communications with prison officials that the inmate used to attempt to informally resolve the grievance. Jefferson's September 2016 letter fulfills none of these requirements. The fact that Jefferson's letter begins by stating that "[t]he following is a formal notice of grievance" does not render it compliant with DOC's formal procedures. *See, e.g.*, *King v. Dingle*, 702 F. Supp. 2d 1049, 1067 (D. Minn. 2010) (holding that labeling an informal letter as a grievance did not constitute exhaustion of prison's formal grievance procedure).

Jefferson contends that the DOC was required to either accept his September 2016 letter as a formal grievance or return it with an explanation of the correct procedure. According to Jefferson, because the DOC never returned the September 2016 letter with instructions, Jefferson reasonably concluded that the DOC had accepted the letter as a formal grievance and assumed that he had exhausted his administrative remedies. But the record neither reflects that the DOC treated Jefferson's September 2016 letter as a formal grievance nor does it establish that it was reasonable for Jefferson to conclude that the full administrative review process had been completed. Under the DOC's grievance policy, the processing of formal grievances includes a decision by the warden or the warden's

designee either dismissing or affirming the grievance, a written notice of that decision provided to the inmate, and an opportunity to appeal that decision. None of these procedures occurred here.

In summary, Jefferson did not properly *initiate* the DOC's administrative review process, let alone "*complete* the administrative review process in accordance with the applicable procedural rules," before filing this lawsuit. *Jones*, 549 U.S. at 218 (emphasis added) (internal quotation marks omitted). For this reason, Jefferson's objection on this basis is overruled.

## II. Clear Error Review

Because Jefferson does not specifically object to any other aspect of the R&R, the Court reviews the remainder of the R&R for clear error.[2] *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam); *see also* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (observing that objections to an R&R that "are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo*

---

[2] In their response to Jefferson's objections, Defendants object to the R&R's recommendation that this action be dismissed *without* prejudice. Defendants were required to file any objections to the R&R within 14 days after being served with a copy of the R&R. 28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(2); LR 72.2(b)(2). Defendants failed to file timely objections, and the Court will not consider the untimely objections raised in Defendants' response brief.

review, but rather are reviewed for clear error"). Having carefully performed this review, the Court finds no clear error and, therefore, adopts the R&R.

## ORDER

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff's objections, (Dkt. 132), are **OVERRULED**.

2. The May 8, 2019 R&R, (Dkt. 130), is **ADOPTED**.

3. Defendants' motion for summary judgment, (Dkt. 96), is **GRANTED IN PART AND DENIED IN PART** as addressed in the May 8, 2019 R&R, and this action is **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiff's motion to compel discovery, (Dkt. 108), and motion seeking appointment of an expert, (Dkt. 119), are **DENIED** as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: August 26, 2019							s/Wilhelmina M. Wright
											Wilhelmina M. Wright
											United States District Judge